IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WEST VIRGINIA HIGHLANDS**
**CONSERVANCY**
**P.O. Box 306**
**Charleston, WV 25321,**

**OHIO VALLEY ENVIRONMENTAL**
**COALITION**
**P.O. Box 6753**
**Huntington, WV 25773,**

    and

**COAL RIVER MOUNTAIN WATCH**
**P.O. Box 651**
**Whitesville, WV 25209**

        **Plaintiffs,**

    v.                                                                                                   CIVIL ACTION NO.
                                                                                                 1:07-cv-00667

**STEPHEN L. JOHNSON**
**Administrator**
**U.S. Environmental Protection Agency**
**Ariel Rios Building**
**1200 Pennsylvania Avenue, N.W.**
**Washington, D.C. 20460**

    and

**DIRK KEMPTHORNE**
**Secretary, U.S. Department of the Interior**
**1849 C Street, N.W.**
**Washington, D.C. 20240**,

        **Defendants.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is an action for declaratory judgment and mandatory injunctive relief arising under the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. (hereinafter "the Act" or "RCRA"), and the Administrative Procedure Act, 5 U.S.C. § 706.  The first cause of action is brought against Stephen L. Johnson, the Administrator of the United States Environmental Protection Agency (hereinafter "EPA") pursuant to the citizens' suit provision of RCRA, 42 U.S.C. § 6972(a)(2), and seeks to compel Defendant Johnson to perform the nondiscretionary duties mandated by Sections 3001(f) and 8002(f) and (p) of RCRA, 42 U.S.C. §§ 6921(b)(3)(C) and 6982(f) and (p).  The second cause of action is brought against Defendant Dirk Kempthorne, the Secretary of the United States Department of the Interior, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, and challenges the failure by him and those working under his authority to consult with the EPA Administrator on the study of coal mining wastes required by Section 8002(f) of RCRA.

2. Defendant Johnson has violated RCRA through his failures (1) to conduct a study of coal mining wastes, (2) to publish the results of that study, (3) to report the results of that study to Congress, and (4) to make a determination, within 6 months of the report of that study, whether the regulation of coal mining wastes as hazardous is warranted.

3. Defendant Kempthorne's failure to consult with the EPA Administrator on the study of coal mining wastes, as required by Section 8002(f) of RCRA, constitutes an agency action unlawfully withheld or unreasonably delayed and should be compelled by this court under the Administrative Procedure Act, 5 U.S.C. § 706(1).

**JURISDICTION AND VENUE**

4.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 6972(a) (RCRA citizens' suit provision), and 28 U.S.C. § 1346 (United States as a defendant).

5.     The relief requested is specifically authorized pursuant to 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (further relief), 28 U.S.C. § 2412 (costs and fees), 42 U.S.C. § 6972(a) ("The district court shall have jurisdiction . . . to order the Administrator to perform [nondiscretionary duties]."), 42 U.S.C. § 6972(e) (RCRA attorney fees provision), and 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.").

6.     Venue is proper pursuant to 28 U.S.C. § 1391(e), because a substantial part of the conduct that gave rise to this action occurred in the District of Columbia, as well as 42 U.S.C. § 6972(a) ("Any action brought under paragraph (a)(2) of this subsection may be brought in the district court for the district in which the alleged violation occurred or in the District Court of the District of Columbia.").

**PARTIES**

7.     Defendant Johnson is the Administrator of the United States Environmental Protection Agency. As such, he is charged under RCRA with the administration of that Act, including the identification and listing of hazardous wastes under Section 3001 of the Act. 42 U.S.C. § 6921.

8.     Defendant Kempthorne is the Secretary of the United States Department of Interior. As such, he is charged under Section 8002(f) of RCRA, 42 U.S.C. § 6982(f), with a

duty to consult with the Administrator in the conduct of a study on the effects of coal mining waste.

9.      Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members and works for the conservation and wise management of West Virginia's natural resources.

10.     Plaintiff Ohio Valley Environmental Coalition (hereinafter "the Coalition" or "OVEC") is a nonprofit organization incorporated in Ohio.  Its principal place of business is Huntington, West Virginia.  It has approximately 1,000 members. OVEC's mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, coalition building, leadership development, and media outreach. OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.  It is also a founding member of the Sludge Safety Project, a collaborative effort seeking to document the effects of coal slurry—a waste product of coal beneficiation—on human health and the environment, to reform the regulation of the disposal of coal slurry, and to encourage the adoption of alternative coal beneficiation techniques that do not generate coal slurry as a waste product. OVEC members are harmed by the lack of information about the chemical makeup of coal slurry, the amount of it generated by the coal mining industry, and the extent of its disposal into slurry impoundments and underground injection wells.  Those harms are caused, in part, by Defendants' failure to conduct the studies at issue in this litigation.  Those harms can be redressed by the relief sought through this complaint.

11.     Plaintiff Coal River Mountain Watch (hereinafter "CRMW"), a nonprofit

membership organization in southern West Virginia, is dedicated to the establishment of social, economic, and environmental justice in the southern coalfields of West Virginia.  A local leader in environmental and community issues related to the impacts of coal mining, CRMW has worked to keep communities intact and to improve the quality of life in those communities.  CRMW is a founding member of the aforementioned Sludge Safety Project. CRMW members are harmed by the lack of information about the chemical makeup of coal slurry, the amount of it generated by the coal mining industry, and the extent of its disposal into slurry impoundments and underground injection wells.  Those harms are caused, in part, by Defendants' failure to conduct the studies at issue in this litigation.  Those harms can be redressed by the relief sought in this complaint.

**FACTS**

12. Coal mining, beneficiation, and processing generate large amounts of waste, including overburden and coal slurry.

13. Overburden consists of the earthen material removed in order to gain access to a coal seam.

14. Coal slurry is a waste product of the beneficiation, or cleansing, of coal.  It consists of a mixture of water, fine pieces of coal, other earthen materials, and chemicals used in the cleansing process.

15. Coal slurry is generated in large quantities at coal preparation plants throughout West Virginia and the rest of the United States.

16. Coal slurry is disposed of in surface impoundments and underground injection wells.

17. Coal slurry and other coal mining wastes are excluded from the definition of hazardous waste by 40 C.F.R. 261.4(b)(7), which expressly excludes from that definition "solid waste from the extraction, beneficiation, and processing of minerals and ore (including coal)."

18. Defendants have not conducted the "detailed and comprehensive study on the adverse effects of solid wastes from active and abandoned surface and underground mines on the environment, including, but not limited to, the effects of such wastes on humans, water, air, health, welfare, and natural resources" that is required by Sections 8002(f) and (p) of RCRA. Those solid wastes include wastes generated in the extraction, beneficiation, and processing of coal.

19. Defendants have not published a report of such a study.

20. Defendants have not submitted a report of such a study to Congress.

21. The Administrator's failure to conduct, publish, and submit the studies required by Section 8002(f) and (p) of the Act by the statutory deadline subjected them to an action brought by the Concerned Citizens of Adamstown. See Concerned Citizens of Adamstown v. EPA, No. 84-3041 (D.D.C. August 21, 1985).

22. As a result of the action brought by the Concerned Citizens of Adamstown, this Court ordered the Administrator to submit the reports required by Section 8002(f) and (p) by December 31, 1985. Id.

23. The Administrator's 1985 Report to Congress that purported to satisfy the requirements of Section 8002(f) and (p) expressly excluded from consideration wastes generated by the mining, beneficiation, and processing of coal.

24. The Administrator's 1986 determination that regulation of certain mining wastes under Subchapter C of RCRA was not warranted did not expressly or implicitly address wastes generated in the mining, beneficiation, and processing of coal. See 51 Fed. Reg. 24,496.

5

25. The Administrator has never made a determination as to whether the regulation of coal mining, beneficiation, and processing wastes should be regulated as hazardous, as Section 3001(b)(3)(C) requires him to do within six months of the submission of a study of coal mining, beneficiation, and processing wastes to Congress.

26. Defendant Kempthorne and his predecessors have not consulted with EPA on the statutorily required study of coal mining wastes.

27. On November 10, 2006, Plaintiffs sent a 60-day notice of their intent to sue Defendant Johnson under Section 7002(a)(2) of RCRA and 40 C.F.R. Part 254 via certified mail, return receipt requested, to Defendant Johnson and to the Attorney General of the United States of America, Alberto Gonzales.

28. Plaintiffs received a return receipt card from Attorney General Gonzales that indicated that he received Plaintiffs' notice on November 15, 2006.

29. Plaintiffs received a return receipt card from Defendant Johnson that indicated that he received Plaintiffs' notice on November 20, 2006.

30. Under 40 C.F.R. § 254.2(c), the statutorily required 60-day period expired no later than January 22, 2007.

31. Plaintiffs' organizational missions are to protect human health and the environment in West Virginia and throughout Appalachia.

32. Plaintiffs Ohio Valley Environmental Coalition and Coal River Mountain Watch are founding members of the Sludge Safety Project, which is dedicated to the protection of human health and the environment from dangers posed by coal slurry and to the adoption of alternative coal beneficiation techniques that do not generate coal slurry as a waste product.

33. The Sludge Safety Project routinely disseminates information about coal wastes and their effects on human health and the environment.

34. The requirement in Section 8002(f) of RCRA that EPA must publish a report of its study of coal mining wastes statutorily entitles Plaintiffs to information about coal mining waste and its disposal.

35. Coal operators have thwarted Plaintiffs' efforts to gain access to slurry impoundments and injection sites to take samples of coal waste and to inspect the facilities.

36. The Sludge Safety Project has difficulty fulfilling its mission because of a lack of information about the chemical makeup of coal wastes, the amount generated by the coal mining industry, alternatives to current disposal methods, and the extent of its disposal, including into slurry impoundments and underground injection wells.

37. Plaintiffs OVEC and CRMW, as founders and participants in the Sludge Safety Project, have had to devote significant resources to obtain information about coal waste and its disposal.

38. Plaintiffs' members live in the vicinity of coal waste disposal areas, including slurry impoundments and injection wells.

39. Plaintiffs' members use groundwater in those areas for domestic purposes.

40. Plaintiffs' members are concerned that the groundwater from which their wells draw may have been contaminated by coal mining wastes.

41. Plaintiffs' members fear that coal mining wastes are toxic as a result of the heavy metals present in coal and the carcinogens used to clean coal.

42. Plaintiffs' members fear that toxic materials from slurry impoundments are leaching into and are being released into the ground and surface waters in their communities.

43. Under the Safe Drinking Water Act, if hazardous wastes are to be disposed of in underground injection wells, those wells must be carefully regulated. See generally 40 C.F.R. §§ 146.61-146.73.

44.     The Safe Drinking Water Act defines "hazardous waste" by reference to the regulatory definition under RCRA. 40 C.F.R. § 144.3.

45.     Because of Defendants' failure to conduct the studies at issue in this litigation, and Defendant Administrator's failure to scrutinize whether the regulation of coal wastes as hazardous is warranted, the treatment of coal mining wastes as nonhazardous wastes under RCRA may be inappropriate.

46.     The treatment of coal mining wastes as nonhazardous under RCRA enables coal operators to dispose of coal mining wastes into underground injection wells with little regulatory oversight.

47.     Plaintiffs and their members have been injured by the denial of information that Defendants are statutorily required to supply from the study and analysis of the risks associated with coal mining wastes.

48.     Plaintiffs and their members also suffer from the uncertainty over the possible contamination of their groundwater and environment from coal wastes as well as dangers of flooding. This uncertainty has produced great anxiety within the community, particularly with regard to the possible linkage of health problems to such contamination.

49.     Defendants' failure to fulfill their statutory and regulatory obligations has further injured the Plaintiffs by forcing them to expend funds and resources to determine the level of any contamination or danger of contamination from these wastes.

50.     Plaintiffs and their members further suffer from economic costs associated with housing, employment, and development due to the uncertainty over the possible contamination of this area and future potential health and environmental problems.

51.     Plaintiffs and their members are further injured by the impact of Defendants' violations on their recreational activities, including concerns that fishing, swimming, and hiking

could pose health dangers due to the contamination by coal mining wastes.

52. If Defendants were ordered to perform the nondiscretionary duties at issue in this litigation, then Plaintiffs' members injuries could be redressed by the proper study and analysis of the risks associated with coal mining wastes as well as increased regulation of the disposal of such wastes in light of those risks.

## CAUSES OF ACTION

### COUNT ONE – CITIZEN'S SUIT AGAINST THE ADMINISTRATOR OF EPA FOR FAILING TO PERFORM NONDISCRETIONARY DUTIES UNDER THE ACT

53. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 52 supra.

54. Section 8002(f) and (p) require the Administrator to "conduct a detailed and comprehensive study" on the effects of wastes generated by coal mining, beneficiation, and processing.

55. Section 8002(f) requires that, "[n]ot later than thirty-six months after October 21, 1980, the Administrator shall publish a report of such study and shall include appropriate findings and recommendations for Federal and non-Federal actions concerning such effects."

56. Section 8002(f) requires that that report "shall be submitted" to Congress.

57. Section 3001(b)(3)(C) of the Act requires that, "[n]ot later than six months after the date of the submission of the applicable study to be conducted under subsection (f), . . . the Administrator shall, after public hearings and opportunity for comment, either determine to promulgate regulations [providing that mining wastes are hazardous] or determine that such regulations are unwarranted."

58. More than 20 years since the statutory deadline have passed and the Administrator has yet to perform the duties enumerated in the foregoing paragraphs with regard

9

to the wastes generated by coal mining, beneficiation, and processing, thereby failing to perform at least four nondiscretionary duties under RCRA.

**COUNT TWO – UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(1)**

59.  Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 52 supra.

60.  Section 8002(f) of RCRA requires Defendant Secretary of the Interior to consult with Defendant Administrator of EPA on a detailed and comprehensive study of wastes generated from coal mining, beneficiation, and processing.

61.  RCRA required that that study be completed by October 21, 1983.

62.  This court's order in Concerned Citizens of Adamstown v. EPA required that study to be completed by December 31, 1985.

63.  To date, Defendant Secretary of the Interior has not consulted on the study required by Section 8002(f).

64.  The Administrative Procedure Act, 5 U.S.C. § 706(1) provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."

65.  Defendant Secretary of the Interior's failure, after more than 20 years, to consult on the study required by Section 8002(f) of RCRA constitutes an agency action unlawfully withheld and unreasonably delayed and should be compelled by this court under the Administrative Procedure Act.

**RELIEF REQUESTED**

ACCORDINGLY, Plaintiffs respectfully request that this Court enter an Order:

(1)  Declaring that Defendant Administrator of the EPA has failed to perform nondiscretionary duties under RCRA;

(2) Declaring that Defendant Secretary of the Interior has unlawfully withheld and unreasonably delayed consultation with the Administrator of EPA on the study required by Section 8002(f) of RCRA in violation of the Administrative Procedure Act;

(3) Ordering Defendants to complete the study required by Section 8002(f) and (p) on the wastes generated by coal mining, beneficiation, and processing and to submit a report of the results of the study to Congress within twenty four (24) months of the order;

(4) Ordering Defendant Administrator of the EPA to make the regulatory determination required by Section 3001(b)(3)(C) of RCRA within thirty (30) months of the order;

(5) Retaining jurisdiction of this action to ensure compliance with its decree;

(6) Awarding Plaintiffs' attorneys' fees and all other reasonable expenses incurred in pursuit of this action; and

(7) Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Jonathan Turley**
JONATHAN TURLEY (DC Bar #417674)
Attorney and Director, Shapiro
Environmental Clinic
George Washington University Law School
2000 H ST., N.W.
WASHINGTON, D.C. 20052
(o) 202-994-7001
(f) 202-994-9811
Email: jturley@law.gwu.edu


**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVSB # 10223)
Attorney for Plaintiffs
Appalachian Center for the Economy and
        the Environment
P.O. Box 507

11

>Lewisburg, WV 24901
>(o) 304-793-9007
>(f) 304-645-9008
>Email: dteaney@appalachian-center.org

Case 1:07-cv-00667-JDB    Document 1    Filed 04/12/2007    Page 13 of 13

12

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
West Virginia Highlands Conservancy, Ohio Valley Environmental Coalition, Coal River Mountain Watch

## DEFENDANTS
Stephen L. Johnson as head of the Environmental Protection Agency, Dirk Kempthorne as Secretary of the Interior

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** 11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jonathan Turley
George Washington Law School
2000 H Street, N.W.
Washington, D.C. 20052
202-994-7001

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)

- ○ **A. Antitrust**
  - ☐ 410 Antitrust

- ○ **B. Personal Injury/Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ● **C. Administrative Agency Review**
  - ☐ 151 Medicare Act
  - Social Security:
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)
  - Other Statutes
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☒ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- ○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIvACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action for declaratory judgment and mandatory injunctive relief under Solid Waste Disposal Act 42 U.S.C. § 6901 et seq. and APA 5 U.S.C. § 706

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 4/11/2007    SIGNATURE OF ATTORNEY OF RECORD  /s/ Jonathan Turley

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.