IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEST VIRGINIA HIGHLANDS ) <br> CONSERVANCY, OHIO VALLEY ) <br> ENVIRONMENTAL COALITION, ) <br> and COAL RIVER MOUNTAIN WATCH ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> STEPHEN L. JOHNSON, Administrator ) <br> U.S. ENVIRONMENTAL PROTECTION ) <br> AGENCY, and DIRK KEMPTHORNE, ) <br> Secretary, U.S. DEPARTMENT ) <br> OF THE INTERIOR ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 07-0667 (JDB) |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Federal defendants Stephen L. Johnson, in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), and Dirk Kempthorne, in his official capacity as Secretary of the U.S. Department of the Interior ("DOI"), hereby submit this reply in support of their motion to dismiss plaintiffs' Complaint for Declaratory and Injunctive Relief in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs' Complaint alleges that EPA has failed to perform nondiscretionary duties purportedly mandated by Sections 3001(b)(3)(C) and 8002(f) and (p) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6091 et. seq., and that DOI has unlawfully withheld or unreasonably delayed agency action in violation of the Administrative Procedure Act ("APA"). As defendants demonstrated in their opening brief, EPA undisputedly conducted the mining

1

waste studies required under RCRA §§ 8002 (f) and (p) and submitted the required reports on the mining waste studies to Congress on December 31, 1985 and on July 31, 1990. See Def. Opening Br. at 6-9. These reports and the subsequent regulatory determinations issued on July 3, 1986, see 51 Fed.Reg. 24,496, and June 13, 1991, see 56 Fed.Reg. 27,300, fulfilled EPA's obligations under Sections 3001(b)(3)(C) and 8002(f) and (p) of RCRA. Moreover, DOI consulted with EPA on the required mining waste studies.

Plaintiffs' Complaint is most accurately construed as a claim that EPA's mining waste studies, reports to Congress, and subsequent regulatory determinations were incomplete or inadequate under RCRA because they excluded mining waste produced from the extraction and beneficiation of coal.[1] Any claim concerning the sufficiency of the mining waste studies, the reports to Congress, or the final Subtitle C regulatory determinations on mining waste, however, should have been raised in a timely lawsuit under APA § 706(2).

Arguing the merits of EPA's mining waste studies or regulatory determinations concerning mining waste at this late date is barred by the general six-year statute of limitations. See Def. Opening Br. at 28. To the extent that this Court is willing to consider plaintiffs' Complaint as a proper mandatory deadline suit against EPA and an APA § 706(1) suit against DOI, the deadline for the required studies passed over twenty years ago, and these claims by plaintiffs also are barred by the statute of limitations. Defendants' contend that 28 U.S.C. § 2401(a) is a jurisdictional bar and that equitable principles cannot extend the time for plaintiffs to file their claims for mandamus relief against the government. See Def. Opening Br. at 13-21.

---

[1] Based on their Opposition Brief, plaintiffs appear to have dropped their claims regarding EPA's alleged failure to study coal processing wastes. See Pl. Opp. Br. at 11 ("Consequently, the questions for this court are . . . (2) whether Defendants' failure to perform their duties to study and report the environmental effects of coal mining and beneficiation wastes was based on a reasonable interpretation of RCRA.").

2

If, however, this Court determines that equitable principles may extend the time for plaintiffs to file their claims, then plaintiffs have made no showing why equitable tolling or the continuing violations doctrine should be applied under this set of facts.  EPA considered that it had complied with its duties under sections 3001(b)(3)(C) and 8002(f) and (p) of RCRA with EPA's submission of the 1985 and 1990 Reports to Congress and the subsequent regulatory determinations on mining waste, and plaintiffs have alleged no facts to suggest that EPA's actions were anything but final.

Furthermore, even if this Court determines that plaintiffs' claims are not barred by the statute of limitations, plaintiffs cannot establish "informational standing" to bring their claims because RCRA §§ 8002(f) and (p) do not create a public right to information concerning mining waste.  For these reasons, defendants respectfully request that this Court dismiss plaintiffs' Complaint in its entirety.

A. **Plaintiffs' Complaint should be dismissed for failure to state a claim because plaintiffs mischaracterize their time-barred challenge to the scope of the mining waste studies and the subsequent Subtitle C regulatory determinations as a missed deadline suit.**

Plaintiffs ask this court to treat defendant's motion to dismiss for failure to state a claim as a motion for summary judgment.  Pl. Opp. Br. at 9.  Plaintiffs contend that: "this Court should conclude that it is neither reasonable nor permissible to interpret Section 8002(f) and (p) to not require the study of coal wastes and should deny Defendants' motion to the extent that it asserts otherwise."  Id. at 35.  This Court should decline plaintiffs' invitation to rule on the merits of EPA's statutory interpretation concerning the scope of the mining waste studies.  Plaintiffs' Complaint does not allege a claim under APA § 706(2), and any claim concerning the merits of EPA's interpretation of the scope of the mining waste studies and the subsequent regulatory determinations is time-barred by 28 U.S.C. § 2401(a).

3

Plaintiffs argue that defendants are asking the Court to resolve a factual discrepancy when, in fact, defendants are asking the Court to draw a legal conclusion that EPA and DOI discharged their duties under sections 3001(b)(3)(C) and sections 8002(f) and (p) based on documents cited in plaintiffs' Complaint and on publicly available Federal Register notices.  The only discrepancy is between plaintiffs' allegation that EPA and DOI have not conducted the required mining waste studies or submitted the required reports to Congress and the existence of the 1985 Report to Congress that plaintiffs themselves cite in their Complaint.  Plaintiffs' real contention is that the 1985 Report to Congress is deficient because the scope of the mining waste study is not as broad as plaintiffs would have it, and "the Court need not accept inferences that are unsupported by the facts set forth in the complaint or 'legal conclusion[s] couched as . . . factual allegation[s].'"  P & V Enterprises v. U.S. Army Corps of Engineers, 466 F. Supp. 2d 134, 140 (D.D.C. 2006).

Moreover, this Court should reject plaintiffs' contention that, because defendants have pointed the Court to the 1985 and 1990 Reports to Congress on mining waste, defendant's motion is one for summary judgment.  On a motion to dismiss for failure to state a claim, the Court may consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C.Cir. 1997).  In fact, plaintiffs' Complaint cites to the 1985 Report to Congress.  See Complaint at ¶ 23 ("The Administrator's 1985 Report to Congress that purported to satisfy the requirements of Section 8002(f) and (p) expressly excluded from consideration wastes generated by the mining, beneficiation, and processing of coal.").  Moreover, this Court may take judicial notice of the 1985 and 1990 Reports to Congress on the mining waste studies.

The D.C. Circuit Court held in Public Citizen v. Nuclear Regulatory Com'n, 845 F.2d 1105 (D.C. Cir. 1988), that challenges to the legal sufficiency of an agency action couched as a deadline suit cannot stand.  Plaintiffs do not even address this case in their opposition brief. Petitioners in Public Citizen argued that section 306 of the Nuclear Waste Policy Act of 1982 requires the Nuclear Regulatory Commission ("NRC") to promulgate binding regulations for the training and qualifications of nuclear power plant personnel.  The NRC argued, however, that its non-binding Policy Statement of March 20, 1985 satisfied its duties under section 306. Petitioners filed their petition too late to make a direct challenge to the Policy Statement, so Petitioners claimed that they were not challenging the Policy Statement itself but rather the Nuclear Regulatory Commission's ongoing failure to promulgate binding regulations pursuant to section 306.  The Circuit Court held that: "The agency has acted . . . Petitioners just do not like what the Commission did."  Public Citizen, 845 F.2d at 1108.  The Court went on to hold that:

> Our acceptance of petitioners' argument would make a nullity of statutory deadlines.  Almost any objection to an agency action can be dressed up as an agency's failure to act.  We can imagine situations where an agency's effort to comply was so flimsy or unpublicized that affected parties could not be expected to grasp that it was attempted compliance.  But this is not such a case.

Id. at 1108.  As the Court found in Public Citizen, id., plaintiffs here use language in their Complaint making clear that the target of their attack is the sufficiency of EPA's reports to Congress on the mining waste studies.  Complaint at ¶ 23 ("The Administrator's 1985 Report to Congress *that purported to satsify* the requirements of Section 8002(f) and (p). . .").

Following the D.C. Circuit's holding in Public Citizen, the Fifth Circuit also has dismissed claims that an agency has unlawfully withheld action when the plaintiffs are actually challenging the sufficiency of an agency action.  See Sierra Club v. Peterson, 228 F.3d 559, 568 (5th Cir. 2000).  In Sierra Club v. Peterson, environmental groups challenged the Forest Service's

5

alleged failure to comply with the National Forest Management Act ("NFMA") in maintaining Texas national forests, and the Circuit Court held that the claims were not reviewable as a challenge to agency inaction. The Court determined that there was no allegation that the Forest Service did not attempt to comply with the statute. "Instead, the Forest Service has been acting, but the environmental groups simply do not believe its actions have complied with the NFMA." Id. at 568.

More recently, the D.C. District Court in Friends of the Earth v. U.S.D.O.I., 478 F. Supp. 2d 11 (D.D.C. 2007), cited both the precedents described above when dismissing environmental organizations' suit against the National Park Service ("NPS") seeking review of rulemaking actions related to the use of off-road vehicles in park units. Plaintiffs claimed that the Executive Order requiring NPS to monitor the effects of off-road vehicles use in park units required the adoption of formal monitoring procedures or a "program." The court determined that: "What plaintiffs seek is not required by the Order, and thus cannot serve as a foundation for review under the APA" for failure to take an agency action that it is required to take. Friends of the Earth, 478 F. Supp. 2d at 27. The court goes on tho states that "What plaintiffs seek is not actually a review of agency inaction, but a review of the exercise of agency discretion, which is generally not reviewable under Heckler v. Chaney, 470 U.S. 821, 832-33 (1985).

Here, plaintiffs similarly seek belated review of the sufficiency of EPA's and DOI's actions taken to comply with sections 3001(b)(3)(C) and 8002(f) and (p) of RCRA. Plaintiffs' attempt to characterize their lawsuit as a missed deadline suit and a suit for agency inaction should not stand. Accordingly, plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

B.     **Plaintiffs' Complaint should be dismissed for lack of jurisdiction because their claims are time-barred.**

Plaintiffs claim that the general six-year statute of limitations is not a jurisdictional bar and that the statute of limitations can be tolled because failure to perform a nondiscretionary duty is a continuing violation. Plaintiffs cite to P & V Enterprises, 466 F. Supp. 2d 134, in which the court treated the government's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) claims that were filed after the period of limitations had run as a motion to dismiss for failure to state a claim under Rule 12(b)(6) instead. The government in that case conceded that the D.C. Circuit in Harris v. F.A.A., 353 F.3d 1006, 1013 n. 7 (D.C. Cir 2004), reiterated its doubt about the jurisdictional nature of statutes of limitation applied to actions against the United States, and plaintiffs contend that this Court should treat defendants' motion regarding the statute of limitations here as one for failure to state a claim.

The government in P & V Enterprises, however, argued that the comment in Harris was not sufficient for the court to reject long-standing precedent such as Spannaus v. Department of Justice, 824 F.2d 52 (D.C. Cir. 1987). In addition, although Irwin v. Department of Veteran Affairs, 498 U.S. 89 (1990), allowed for equitable tolling, the Supreme Court in Irwin did reaffirm that the statute of limitations was an element of jurisdiction. Id. at 94 ("Respondents correctly observe that [the limitation period] is a condition to the waiver of sovereign immunity and thus must be strictly construed.").

Even if this Court determines to treat defendants' motion with respect to the statute of limitations as one for failure to state a claim, plaintiffs' Complaint should be dismissed. Irwin held simply that plaintiffs who have not initiated court actions within the time period allotted by statute are entitled, where appropriate, to invoke equitable doctrine to toll the limitations period. As defendants argued in their opening brief, see Def. Opening Br. at 17-18, plaintiffs here seek

to compel the performance of purely governmental functions, and Irwin does not apply to causes of action that are "so purely governmental that there is not basis for assuming customary ground rules apply." Chung v. Department of Justice, 333 F.3d 273, 277 (D.C. Cir. 2003).

Contrary to plaintiffs' contention in their opposition brief, the Supreme Court did not invalidate the D.C. Circuit Court's holding in Chung with its statement in Scarborough v. Principi, 541 U.S. 401, (2004), that, "it is hardly clear that Irwin demands a precise private analogue." Id. at 422. The Court in Scarborough was considering whether or not a timely attorney fee application made under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B), can be amended after the 30-day filing period has run in order to cure an initial failure to allege that the government's position in the underlying litigation lacked substantial justification. The Court held that the amended application arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the initial application, so the relation-back doctrine allowed for the amendment. Id. at 419. In considering the government's alternative argument that section 2412's waiver of sovereign immunity is conditioned on the fee applicant's meticulous compliance with each and every requirement of section 2412(d)(1)(B) within 30 days of final judgment, the Court found that Irwin was enlightening. While the Court suggested that Irwin may not demand a precise private analogue, the Court nonetheless found a precise private analogue in that case, holding that: "In any event, § 2412(d) is analogous to other fee-shifting provisions abrogating the general rule that each party to a lawsuit pays his own legal fees. The provision resembles 'prevailing party' fee-shifting statutes that are applicable to suits between private litigants." Id. at 422. No such private analogue exists here. Plaintiffs are asking for mandamus relief against the government.

This Court need not resolve this issue, however, because plaintiffs' Complaint fails even if the doctrines of equitable tolling or continuing violations apply to plaintiffs' claims. In fact, the D.C. Circuit Court in Felter v. Kempthorne, 473 F.3d 1255 (D.C.Cir. 2007), recently declined to resolve the issue of whether Irwin undermined the Circuit Court's precedent holding section 2401(a) to be jurisdictional and thus not susceptible to such judicial exceptions. Id. at 1260. The Circuit Court found that even if the doctrines of equitable tolling or continuing violations applied to section 2401(a), plaintiff's claims in Felter failed because plaintiff had not alleged facts sufficient to constitute a continuing violation or to support equitable tolling. Plaintiffs here have not alleged any facts in their Complaint or in their opposition brief to support the application of equitable doctrine. Accordingly, this Court should decline to apply equitable doctrine and find that plaintiffs' claims are time-barred. See P & V Enterprises, 466 F. Supp. 2d at 149-150 ("the plaintiffs have not suggested, nor, based on the record before it, can the Court fathom, any reason why the limitations period should be equitably tolled"); Irwin, 498 U.S. at 96 (finding that equitable tolling could be applied in Title VII claims against the government but determining that the doctrine's requirements were not met on the specific facts of Irwin where petitioner's excuse for the late complaint was his lawyer's absence from the office).

Plaintiffs cite to four other district court cases as support for their contention that their Complaint is timely. The first case the plaintiffs ask this court to follow is Schoeffler v. Kempthorne, 2007 WL 1850711 (W.D.La.) (June 26, 2007). The court in Schoeffler considered the Secretary of the Interior's failure to designate critical habitat for the Louisiana black bear within one year after issuing a finding that designating critical habitat for the species was prudent but not yet determinable. Plaintiffs filed their Complaint alleging that the Secretary had

9

failed to perform its nondiscretionary duty to designate critical habitat after the limitations period had run. The court found that the "statute of limitations is one such term that operates to narrow the waiver of sovereign immunity, and failure to sue the United States within the limitations period is not a waivable defense but operates to deprive federal courts of jurisdiction." Schoeffler at *6. The court held that, therefore:

> plaintiffs must show either that their right of action did not accrue on January 7, 1993, but at a later point, within six years of the filing of their Complaint, or that the statute of limitations has otherwise been tolled. If plaintiffs fail to meet their burden, their claims are untimely and this Court has no jurisdiction over the matter.

Noting that, following the deadline for the critical habitat determination, the Secretary of the Interior made several proposals and undertook other actions indicating that a designation was forthcoming, id. at *3, the court held that plaintiffs' right of action did not accrue when the deadline for the critical habitat determination passed because, "The Secretary's not determinable finding was followed by a subsequent action whereby the defendant, at least superficially, attempted to comply with the legal mandate by proposing rules, accepting public comments, holding public hearings, and even promising that critical habitat designation would be forthcoming." Id. at *7. The court found that: "Plaintiffs could not have inferred from the circumstances in general, and the Secretary's non-compliance in particular, that the defendant's ongoing failure to finalize a habitat determination should be perceived as a situation of adverse action, rather than bureaucratic bungling or foot dragging." Id. at *8. Taking into account the same post-deadline actions by the Secretary, the court also held that the violation was continuing and did not constitute a discrete one-time violation with lingering effects or consequences. Id. at *11. That unique set of facts is not present here.

EPA explicitly stated in the 1985 Report to Congress that it was excluding wastes produced from coal mining and beneficiation. See Exhibit A to Def. Opening Br. at ES-3. EPA explained in the text of the report that the agency had determined that the wastes produced from coal mining and beneficiation were outside the scope of the studies the agency was required to perform in response to Sections 8002(f) and (p) of RCRA. Id. Unlike the facts in Schoeffler, plaintiffs in this case have cited to no action on the part of EPA indicating that EPA's determination to exclude coal mining and beneficiation from the mining waste studies was anything but final.

Plaintiffs also cite to Southern Appalachian Biodiversity Project v. USFWS, 181 F. Supp. 2d 883 (E.D.Tenn. 2001), in which the court found that the Fish and Wildlife Service's not prudent findings were not final agency actions. Id. at 887. That case is not applicable to this set of facts because EPA and DOI undisputedly acted, and EPA's determination to exclude wastes from coal mining and beneficiation from the mining waste studies was final. For the same reasons, plaintiffs' reliance on the court's reasoning in American Canoe Ass'n, Inc. V. USEPA, 30 F. Supp. 2d 908, 925 (E.D.Va. 1998) and the court's holding in Natural Resources Defense Council, Inc. v. Fox S.D.N.Y., 909 F.Supp. 153 (S.D.N.Y. 1995), is misplaced.

Because plaintiffs have made no attempt either in their Complaint or in their response to defendants' Motion to Dismiss to explain why this Court should apply equitable doctrine and toll the limitations period applicable to plaintiffs' claims, this Court should dismiss plaintiffs' Complaint in its entirety.

## C.  Plaintiffs' Complaint should be dismissed because plaintiffs do not have informational standing.

If the Court determines that plaintiffs have alleged proper claims that survive the limitations period, then plaintiffs' Complaint must be dismissed for lack of standing. Plaintiffs

allege that they suffer an "informational" injury from EPA's and DOI's failure to include coal mining waste in the mining waste studies published to Congress in 1985 and 1990. See Pl. Opp. Br. at 36. As defendants showed in their opening brief: "[i]nformational standing arises 'only in very specific statutory contexts' where a statutory provision has 'explicitly created a right to information.'" Farm Bureau v. U.S.E.P.A., 121 F. Supp. 2d 84 (D.D.C. 2000) (citing Animal Legal Defense Fund, Inc. v. Espy, 23 F.3d 496, 502 (D.C. Cir. 1994)). RCRA §§ 8002 (f) and (p) do not explicitly create a right to information.

The D.C. District Court in Farm Bureau found that: "Plaintiffs would have the court expand the boundaries of informational standing to encompass every case alleging a governmental failure to implement or enforce any statutory provision simply because the government action creates information," id. at 97-98, and that "[e]ach of the cases relied on by plaintiffs involved a statute that explicitly created a right to information, thereby creating a basis for informational standing." Id. The court determined that, "The only report that the agency is statutorily required to prepare is a report to Congress after the program has been in effect for four years," and that there was no statutory requirement to share results of the endocrine disruptor screening program with public. Id. at 99. That is exactly the case here.

Plaintiffs contend that they have informational standing under Federal Election Com'n v. Akins, 118 S.Ct. 1777 (1998). The Supreme Court in Akins, however, found informational standing under the Federal Election Campaign because the statute seeks "to protect individuals such as respondents from the kind of harm they say they have suffered, i.e., failing to receive particular information about campaign-related activities." Id. at 1785. Contrary to plaintiffs' assertion, RCRA §§ 8002(f) and (p) does not seek to protect plaintiffs from lack of information about mining wastes. The only reporting requirement under sections 8002(f) and (p) is a report

to Congress prior to the EPA's Subtitle C regulatory determination on mining wastes. Accordingly, plaintiffs' claims should be dismissed for lack of standing.

### IV.   CONCLUSION

Plaintiffs fail to state a claim against the Administrator of EPA or the Secretary of the Interior for which relief can be granted because EPA and DOI discharged their duties under RCRA §§ 3001(b)(3)(C) and 8002(f) and (p) over fifteen years ago. This Court should reject plaintiffs' belated attempt to challenge the merits of EPA's permissible interpretation of the scope of mining waste studies required under the statute. Moreover, plaintiffs' claims are time-barred by the statute of limitations, and plaintiffs have made no showing that the application of equitable doctrine to toll the limitations period is appropriate under the set of facts here. Furthermore, plaintiffs do not meet the requirements for standing to bring this action because RCRA §§ 8002(f) and (p) do not establish a public right to information on mining waste. For the foregoing reasons, federal defendants respectfully request that this Court dismiss plaintiffs' Complaint in its entirety.

Respectfully submitted this 23rd day of August, 2007.

>RONALD J. TENPAS
>Acting Assistant Attorney General
>United States Department of Justice
>LETICIA J. GRISHAW, Chief
>
>
>         /s/ Mary Whittle
>By:_____
>MARY WHITTLE
>DC Bar #973916, TX Bar #24033336
>Trial Attorney
>Environmental Defense Section
>Environment and Natural Resources Division
>United States Department of Justice
>P.O. Box 23986
>Washington, D.C. 20026-3986

                                  Tel: (202) 514-0286
                                  Fax: (202) 514-8865
                                  Email: mary.whittle@usdoj.gov

                                  Attorneys for Defendants

OF COUNSEL:

LAUREL CELESTE
Attorney, Office of General Counsel
U.S. Environmental Protection Agency
(2333A)
1200 Pennsylvania Ave., N.W.
Washington D.C. 20460
Tel: (202) 564-1751
Fax: (202) 564-5644
Email: celeste.laurel@epa.gov

EMILY MORRIS
Department of the Interior
Office of the Solicitor
Tel: (202) 208-5236
Fax: (202) 219-1789